**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          swestcot@bursor.com

*Attorneys for Plaintiff*
*(additional counsel appears on signature page)*

FILED
CLERK, U.S. DISTRICT COURT

DEC 1 0 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

FAX FILING

EMILY HOGAN and PAMELA RUBEO, on Behalf of Themselves and all Others Similarly Situated,

Plaintiffs,

v.

ADT, LLC d/b/a ADT SECURITY SERVICES

Defendant.

Civil Action No.

CV12- 10558 DMG (PLAx)

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

CLASS ACTION COMPLAINT

Plaintiffs Emily Hogan and Pamela Rubeo ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against ADT, LLC d/b/a ADT Security Services ("ADT") upon personal knowledge as to their own acts and, as to all other allegations, upon information and belief, and upon investigation by counsel.

## OVERVIEW OF THE ACTION

1.      Plaintiffs bring this class action to redress Defendant's deceptive and unlawful business acts and practices in the sale of alarm equipment and home security monitoring services.  These unlawful business practices are intended to accomplish one goal: keep customers tethered to ADT's services for as long as possible.  This goal is unlawfully accomplished by, among other things: requiring the payment of significant early termination fees - even when customers terminate for inadequate service.  In addition, ADT seeks to maximize its profits by luring customers into multi-year contracts with the promise of a flat monthly fee for monitoring services while ADT in fact retains and exercises a purported unilateral "right" to increase fees at will – even while customers are still under contract and without providing any prior notice.

2.      The lynchpin of ADT's "never let them go" strategy is the early termination penalty.  This class action is intended to redress Plaintiffs' wrongful practice of imposing early termination fees, which are unlawful penalties used simply as an anti-competitive device and not to compensate ADT for any true costs of breach.  These penalties, which are unilaterally imposed by Defendant – even when Defendant fails to perform the services promised - also violate the consumer protection statutes of California and Illinois and similar laws nationwide.

3.      The early termination penalty is extracted under circumstances which cannot be justified, for example, as with Plaintiff Emily Hogan, when Defendant has failed to perform the very services that form the basis of ADT's obligation.  This

penalty is also extracted from customers who contracted with ADT to simply monitor a system that was previously installed, requiring no equipment to be installed and resulting in a windfall to ADT upon termination.  By charging the early termination fee ADT gets paid for years of monitoring, without doing any monitoring to earn those fees.

4.     In addition, Plaintiffs seek redress for Defendant's actions in unilaterally increasing alarm monitoring fees (referred to herein as "Unilateral Price Increases" or "UPI").  ADT increases customer's rates while customers are under contract for lesser fees, without adequate prior notice and without providing the appropriate and required disclosures necessary to ensure that customers consent to these increases in advance of their institution.  ADT bases its "right" to do so on small print boilerplate in the contract that is not signed or highlighted for the customer in any way and that simply declares ADT's right to increase fees unilaterally.

5.     The proposed class consists of two groups of consumers: (1) all consumer subscribers who have home security monitoring accounts with Defendant and whose contracts contain an early termination fee provision (also called an Early Termination Fee or Early Cancellation Fee, collectively "ETF", and comprising the "ETF class"); (2) all consumer subscribers who have alarm monitoring accounts with Defendant and whose rates were increased by Defendant without prior notice while in the initial contract period or during subsequent contractual extensions.

6.     Through a uniform and common course of conduct, Defendant charged Plaintiff Rubeo and other customers ETFs consisting of 75% of the amount due under their contract at the time of termination – even though no further services were being provided.  On information and belief, Defendant's contracts in some instances, as with Plaintiff Hogan's contract, provide for ETFs of $200 or $400 instead of the 75% ETF.  The flat fee ETFs imposed upon customers do not vary during the term of

the service plan.  The customer is required to pay the full ETF whether he or she cancels two months after the service plan goes into effect or one month before the initial contract term is scheduled to expire.

7.      As alleged herein, Defendant's conduct gives rise to Plaintiffs' claims for (1) violation of California and Illinois' consumer protection laws and substantially similar laws nationwide; (2) Declaratory Relief pursuant to 28 U.S.C. Section 2201; (3) violation of the Truth in Lending Act; and (4) unjust enrichment.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1332(d), because this is a nationwide class action lawsuit in which over $5,000,000 is at issue, there are more than 100 putative class members, and at least one Class Member is a citizen of a state other than Defendant's state of citizenship.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted occurred in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of its products and services in this District.

## THE PARTIES

10.      Plaintiff Emily Hogan is a citizen of California, residing in Los Angeles.

11.      Plaintiff  Pamela Rubeo is a citizen of Illinois, residing in Chicago.

12.      Defendant ADT, LLC d/b/a ADT Security Services is a Delaware corporation with its principal place of business in Florida.  ADT provides alarm and monitoring services in California and nationwide through its authorized dealers or directly.

**ADT AUTHORIZED DEALERS**

13.    Defendant and its authorized dealers were agents or joint venturers of each other at all times mentioned herein and in entering into and enforcing ADT's contracts its authorized dealers were acting within the course and scope of such agency and/or joint venture.  Defendant had actual and/or constructive knowledge of the acts of its authorized dealers and ratified, approved, joined in and/or authorized the acts of any authorized dealer in connection with the Unilateral Price Increases and ETFs and cancellation fees discussed herein.

14.    Whenever an allegation regarding any act of the Defendant is made herein, such allegation shall be deemed to mean Defendant or its agents, employees, officers or directors did or authorized such acts while actively engaged in the affairs of the Defendant and while acting in the scope and course of their agency or employment.

**FACTUAL ALLEGATIONS**

**Unilateral Price Increases**

15.    Defendant is and has at all times relevant to this Complaint been engaged in the business of selling home security services and equipment, specifically burglar alarms and monitoring and related goods and services in California and Illinois, and, on information and belief, nationwide.

16.    The aforementioned goods and services are sold directly by ADT or through a network of ADT authorized dealers.  All direct and indirect sales involve written contracts and all involve the purchase of goods or services.

17.    Defendant requires customers to abide by a standard customer service agreement ("Agreement") that is provided by ADT and by its authorized dealers directly to its customers.  On information and belief, ADT prepares and provides the form contracts to its authorized dealers.

18.    Defendant distributes the Agreement on a preprinted, standardized form that is not subject to modification or negotiation.  Defendant presents the Agreement to prospective subscribers on a "take it or leave it" basis.  The Agreement is a contract of adhesion.

19.    The contracts currently used in California are substantially similar to the Agreements used in Illinois and elsewhere.  The Agreement provides, on the front page – the only page that the subscriber is asked to sign -- a fixed price for the purchase or an alarm and monitoring service for a fixed contract term.  The Agreements generally provide that the "initial term" of the residential Agreement shall be two or three years.  After the expiration of the initial term, the contract provides that service continues automatically on a month to month basis, with a consumer retaining the right to terminate the contract upon 30 days' written notice.

20.    Upon information and belief, ADT's contracts consist of several pages, only the first page of which is required to be signed.  The first page of the contract sets forth the services to be provided and the total monthly service charge for burglary monitoring and related monitoring services.  The total amount of fees due each month for services is handwritten in the space provided.  This form also specifies the equipment to be installed and prices for that equipment.

21.    Upon information and belief, none of the contracts indicate the sum total for all payments to be made during the initial term of the contract.

22.    The contracts between ADT and consumers for burglary and monitoring services, to the extent that they require more than four installment payments, are retail installment contracts as defined by the Truth in Lending Act (TILA).

23.    TILA requires that the total of all payments, or the total cash price of the goods or services purchased, be disclosed on any retail installment contract.

24.    Moreover, within the boiler plate of the Agreement, Defendant unilaterally reserves the right to increase its monthly monitoring rate upon notice to

its customers at any time after the first year of service.  This provision is buried within the contract and does not require signature on the page in which it appears, or require other acknowledgement.  It is this provision upon which Defendant relies to regularly and uniformly increase rates upon its customers after having locked them into a multi-year contract purporting to provide a fixed monthly monitoring fee.

25.    Defendant's practices do not even comply with their own contract because they do not uniformly provide notice of rate increases.  The contract allows customers to challenge any fee increase within 30 days of notice of the increase.  However, on information and belief, ADT routinely increases its customers' rates without any notice whatsoever, expecting consumers to overlook the increase because it simply appears as a (typically small) increased charge on their bills.

26.    ADT does not disclose, at the time a consumer signs the direct contract with ADT, the amount by which the service charge will increase, when it will increase, nor the increase in the total amount due over the initial term.

27.    Because of the manner in which the price for the monthly service charge is presented on the ADT contract form, reasonable consumers entering into such contracts are likely to be deceived as to the true cost of the service during the initial contract term.  Furthermore, because ADT does not provide notice of fee increases even after the initial contract period, reasonable consumers may not become aware of the fee increase in sufficient time to challenge it or change providers without incurring additional costs.

28.    Because Defendant fails to disclose the sum total of all required installment payments due during the initial and extension terms of its contracts, and deceptively presents the contract rate and cost information to consumers, its acts and practices violate TILA and the state consumer protection laws set forth herein.

**Early Termination Fees**

29.     Defendant's Agreement includes, as a term and condition of service, a purported liquidated damages clause that requires subscribers to pay an early termination fee ("ETF") of 75% of the remaining balance of the contract amount, if for any reason they seek to terminate service before the expiration of the contract period, which is typically two or three years.

30.     Some forms of ADT's contracts provides for a flat fee of $450 to ADT if the consumer terminates the contract at any time during the first year of the initial term and $200 to ADT if the consumer terminates at any time during the second of the two years of the initial term.  Thus, a consumer who terminates in the eleventh month must pay the same ETF as the consumer who terminates in the second month.

31.     Furthermore, the customer must pay the ETF even if cancellation is the result of non-existent, poor or otherwise inadequate service.

32.     None of the versions of the ETF described herein provide a reasonable measure of the anticipated or actual loss, if any, that the termination causes Defendant.  Moreover, the actual loss occasioned by termination is readily ascertainable.

33.     The ETF is not designed to compensate Defendant for damages, if any, arising from the early termination, but rather is designed to serve as a disincentive for customers to switch to competing services in the event that they become dissatisfied with the services provided by Defendant.

34.     If and to the extent that Defendant suffers any damage upon early termination of a customer's contract, it is neither impractical nor extremely difficult to measure or estimate the actual damage.  Further, if and to the extent Defendant suffers any damage upon early termination of a service contract, the ETF of 75% of the contract amount due and/or the flat fee ETFs are not a reasonable measure or estimation of such damages.

35.     In addition to deterring customers from entering into contracts with competing service providers, another purpose of the ETF may be, in some instances, to recoup alarm equipment costs.

36.     If that is the case, Defendant is disguising a fee to recover equipment costs and prevent customer defection as a liquidated damages clause, which is an illegal penalty when damages are readily calculable, as they are here, and when the charge bears no reasonable relationship to the anticipated harm in the even of a breach by the other party.  The ETF is neither designed nor intended to compensate Defendant for any damages arising from the termination, but has the effect of locking in subscribers and discouraging them from switching to competing providers.

37.     Defendant's ETF stifles competition in the alarm services industry by preventing consumers from freely shopping for the best provider.

38.     The ETF is an illegal and void penalty provision that constitutes an unjust, unconscionable, unlawful, unfair and deceptive practice under applicable law.

39.     Furthermore, Plaintiffs are informed and believe that any request for a change in service to a new location or to the scope of services provided, can only be granted with a renewal of the initial contract term, thereby extending the service contract an additional two or three years as of the date of the change. This required extension further discourages Plaintiffs and members of the ETF Class from exploring other service options, changing their service to obtain lower prices or otherwise modifying their plan because it reinstates early termination penalties.

40.     Plaintiffs are informed and believe that Defendant's customers are locked into service agreements beyond the period at which Defendant no longer needs to "recover" alleged equipment costs.

41.     Plaintiffs are informed and believe that the early termination penalty provisions have permitted Defendant to collect revenues and generate enormous

profits as a result of: (a) the payment of early termination penalties; and (b) the revenue generated by tethering Plaintiffs to service for at least the original contract period and, in many cases, for additional months or years.

## FACTS RELATING TO NAMED PLAINTIFFS

42.     Plaintiff Emily Hogan entered into an Agreement with Defendant in July 2008.  Her initial quarterly contract rate was $140.97 per month.  Defendant unilaterally increased her rate, without prior notice, in August 2011.  Defendant again unilaterally increased her rate in March of 2012.   Emily Hogan's Agreement requires notification of any rate increase.  The contract provides that Ms. Hogan would have the right to challenge, in writing, any rate increase within 30 days of notice of the increase.  The contract further provides that ADT may then agree to waive the increase however, if ADT does not do so, Ms. Hogan would have to provide 30 days' notice of termination.

43.     This provision provides another disguised penalty fee for ADT.  If ADT does not waive its increased fee, a customer would be charged that fee for at least another month or two before ADT would allow them to terminate.

44.     Plaintiff Pamela Rubeo entered into an Agreement with Defendant in March 2011.  Her home was burglarized in September 2011, despite the fact that her alarm system was activated that morning.  After reporting the burglary, Rubeo was advised by ADT that the alarm she had purchased from Protect Your Home, an ADT Authorized Dealer, was obsolete and was not being sold by ADT.  Because Rubeo had not realized that the alarm they purchased could so easily be bypassed, she elected to terminate her relationship with ADT and its authorized dealer.  She notified ADT and Protect Your Home in writing and sought to cancel her contract without penalty.  Despite being advised that ADT would not pursue an ETF penalty, she was advised months later by the Dealer that an ETF would be applied, and she was subsequently billed $743.19 for early termination of her contract.  After having

1   been burglarized and lost thousands of dollars worth of possessions, she was now

2   being penalized by the very company that was supposed to protect her home in the

3   first place.  Because she did not want to have this wrongful bill negatively impact her

4   credit, she has been making payments toward a reduced amount that ADT and its

5   agent, Protect Your Home, agreed to accept.

6        45.    Plaintiff is entitled to recoupment of the ETF payments that have been

7   made because the ETF is an illegal and unenforceable penalty.

8                            **CLASS ACTION ALLEGATIONS**

9        46.    Plaintiffs bring all claims herein as class claims pursuant to Fed. R. Civ.

10   P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with

11   respect to the classes defined below (collectively "ETF Class" and "Increased Rate

12   Class"), of which Plaintiffs are members.  Class A is the ETF Class and consists of

13   all current and former consumer subscribers of Defendant's alarm monitoring

14   services in the United States who have been charged or are subject to an ETF or

15   other fee related to the cancellation of service.  Class B is the Increased Fee Class

16   that consists of all current and former consumer subscribers of Defendant's alarm

17   monitoring services in the United States who have been charged or are subject to a

18   fee increase which fee was not specifically disclosed prior to the provision of

19   services subject to such increased fee.

20        47.    Plaintiffs also seek to represent subclasses defined as: (i)  all current and

21   former consumer subscribers of Defendant's alarm monitoring services in California

22   and Illinois who have been charged or are subject to an ETF or other fee related to

23   the cancellation of service; and (ii) all current and former consumer subscribers of

24   Defendant's alarm monitoring services in California and Illinois who have been

25   charged or are subject to a fee increase which fee was not specifically disclosed prior

26   to the provision of services subject to such increased fee.

27

28

48.     Excluded from the Classes are members of the judiciary, Defendant, any entity in which it has a controlling interest, and officers and directors and the members of their immediate families.  Plaintiffs specifically reserve the right to amend the Classes after further investigation and discovery.

49.     At this time, Plaintiffs do not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiffs believe the Class Members are so numerous that joinder of all members is impracticable.  The number of class members can be determined through discovery of Defendant's records.

50.     This action involves questions of law and fact common to Plaintiff and all members of the Class, which include the following:

(a)     Whether Defendant's Agreement is a retail installment contract;

(b)      Whether Defendant's Agreement is governed by TILA, and if so whether the requirements of TILA were met;

(c)     Whether Defendant breached its Agreement by failing to provide advance notice to its customers of fee increases;

(d)     Whether the ETF is an unlawful penalty;

(e)     Whether Defendant charged Class members ETFs;

(f)     Whether Defendant's conduct constitutes deceptive, unfair and/or oppressive conduct;

(g)     Whether Defendant is/was unjustly enriched;

(h)     Whether Defendant intended the ETF to restrict Class members' ability to switch providers or subsidize the cost of alarm systems purchased by Plaintiffs and the Class from Defendant;

(i)     Whether Declaratory Relief is appropriate; and

(j)     Whether Plaintiffs and the Class have been damaged, and, if so the proper measure of damages.

51.     These and other questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class members.

52.     The claims of the named Plaintiffs are typical of the claims of the proposed Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to, or which directly conflict with, the interests of the other members of the Classes.

53.      Plaintiffs have engaged the services of counsel who are experienced in complex class litigation, who will adequately prosecute this action, and who will assert and protect the rights of and otherwise represent Plaintiffs and the absent Class Members.

**The Prerequisites of Rule 23(b)(2) are Satisfied**

54.     The prerequisites to maintaining a class action for injunctive and equitable relief exist as Defendant has acted or refused to act on grounds generally applicable to the Classes thereby making appropriate final injunctive and equitable relief with respect to the Classes as a whole.

55.     The prosecution of separate actions by members of the Classes would create a risk of establishing incompatible standards of conduct for Defendant.

56.     Defendant's actions are generally applicable to the Classes as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole.

57.     Defendant's systemic policy and practice makes declaratory relief with respect to the Classes as a whole appropriate.

**The Prerequisites of Rule 23(b)(3) are Satisfied**

58.     The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of this controversy.  The likelihood that individual members of the Classes will prosecute separate actions is

remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual member of the Classes.  This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the classes identified above.

## COUNT I

**Violation of the Unfair Competition Law, California Business & Professions Code Sections 17200, *et seq.***

**(California Subclass only)**

59.     Plaintiffs incorporate the above allegations by reference as though fully set forth herein.

60.     Plaintiff Hogan brings this claim individually and on behalf of the California Subclass members, as defined above.

61.     The acts and practices engaged in by Defendant and described herein constitute unlawful, unfair, and fraudulent business practices in that they impose ETFs and cancellation fees that are unreasonable, invalid and unfair because they are not reasonably related to the loss or damage suffered by ADT.

62.     Defendant's actions are also unlawful, unfair and/or fraudulent in that they: (i) fail to adequately disclose material information including the ETFs and cancellation provisions of their contracts; (ii) fail to adequately disclose material information including that ADT reserves the right to unilaterally increase its fees at any time; (ii) fails to adequately disclose that contract terms may be required to be extended (or an ETF applied) if a customer moves or changes the terms of service prior to the expiration of his/her initial contract term; (iii) includes unconscionable and unenforceable terms and conditions in its form contracts that Class members never accepted or otherwise agreed to; (iv) implements an ETF and cancellation fee for the purpose of retaining customers; (vi) fails to provide full disclosure at the

inception of the contract period of amounts due under the contract, including amounts due under any proposed fee increases; and (vii) fails to provide advance notice of any fee increases.

63.     Defendant intended or consciously disregarded that Plaintiff Hogan and the California Subclass members would rely on its omissions, misrepresentations, and practices so that customers would become enrolled and face fees if they cancelled services for any reason, including that the services provided were inadequate or failed of their essential purpose.

64.     Pursuant to Cal. Bus. & Prof. Code Section 17203, Plaintiff Hogan and the California Subclass members are therefore entitled to equitable relief, including restitution of all monies paid to ADT by the imposition of the ETF and cancellation fees and unauthorized fee increases, disgorgement of all profits accruing to ADT because of its unlawful, unfair and fraudulent business practices, a permanent injunction enjoining ADT from its unlawful, unfair and fraudulent business activities as alleged herein, and appropriate declaratory relief as described herein.

## COUNT II

### Violation of Consumers Legal Remedies Act, California Civil Code Sections 1750, *et seq.*

### (California Subclass Only)

65.     Plaintiffs incorporate the above allegations by reference as though fully set forth herein.

66.     Plaintiff Hogan brings this claim individually and on behalf of the California Subclass members.

67.     Defendant is a "person" within the meaning of Civil Code Sections 1761(c) and 1770, and provides "services" within the meaning of Civil Code Section 1761(b) and 1770.  Defendant's customers, including Plaintiff Hogan and the

California Subclass members, are "consumers" within the meaning of Civil Code Section 1761(d) and 1770.

68.     Defendant violated Section 1770(a)(5)'s proscription against representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have by failing to adequately disclose the fees to be assessed under the contracts, including monthly fees, ETFs and cancellation fees, and by assessing the related fees against Plaintiff Hogan and the California Subclass members.

69.     Defendant violated Section 1770(a)(9)'s proscription against advertising goods or services with the intent not to sell them as advertised by failing to provide advance notice of fee increases as required by its contract and by failing to adequately disclose the fees to be assessed under the contracts, including monthly fees, ETFs and cancellation fees, and by assessing the related fees against Plaintiff Hogan and the California Subclass members.

70.     Defendant violated Section 1770(a)(14)'s proscription against representing that a transaction confers or involves rights, remedies or obligations that it does not have or involve, or which are prohibited by law, including by failing to adequately disclose the fees to be assessed under the contracts, including monthly fees, ETFs and cancellation fees, and by assessing the related fees against Plaintiff Hogan and the California Subclass members.

71.     Defendant violated Section 1770(a)(19) by inserting unconscionable provisions in the Agreement, including the ETF and other clauses that limit ADT's liability for its own intentional misconduct, that purport to limit the statutes of limitation under which consumers can bring suit for breach of the Agreement and other claims, and that allow ADT to unilaterally increase fees.

72.     Defendant has a duty to disclose all monthly fees and charges to be assessed during the contract period prior to completing the transaction which triggers these contractual obligations. ADT failed to do so.

73.     The facts concealed or inadequately disclosed by Defendant were material, in that a reasonable person would have considered them important in deciding whether or not to subscribe to ADT's services.

74.     Defendant's concealment and deceptive practices, in violation of the CLRA, were designed to induce Plaintiff Hogan and the California Subclass members to subscribe to ADT's services.

75.     Defendant intended to do the act that was deceptive and/or fraudulent, to market and sell ADT services without disclosing the material terms of service described herein, and by omitting to advise customers of the conditions under which their contracts would be extended and additional fees assessed.

76.     Plaintiff Hogan and the California Subclass members suffered actual damages as a direct result of Defendant's concealment and/or omissions.

77.     To this day, ADT continues to violate the CLRA by assessing unreasonable ETF's and cancellation fees and failing to disclose fee increases prior to their assessment or prior to entering into a contract for service.

78.     Plaintiff Hogan has complied with California Civil Code Section 1782(a) by serving a preliminary notice before filing a complaint for damages under the Consumers Legal Remedies Act, Cal. Civil Code Section 1750, *et seq.*

79.     Defendant has failed to remedy its conduct as demanded in Plaintiffs's preliminary notices.

80.     Pursuant to the provisions of Cal. Civ. Code Section 1780, Plaintiff Hogan on behalf of herself and the California Subclass members seek injunctive relief, restitution, compensatory and punitive damages pursuant to Cal. Civil Code

Sections 1780, 1782(b) as requested herein, and any other relief this Court deems appropriate.

## COUNT III

### Violation of California Civil Code Section 1671

### (California Subclass Only)

81.     Plaintiffs incorporate the above allegations by reference as though fully set forth herein.

82.     Plaintiff Hogan brings this claim individually and on behalf of the California Subclass members.

83.     It is neither impractical nor extremely difficult for ADT to determine the actual amount of damages occasioned by a customer's early termination of the purported Agreement.

84.     ADT's ETFs bear no reasonable relationship to the actual costs incurred by ADT when customers cancel their service. Rather, the ETFs are intended as a penalty to dissuade Class members from cancelling ADT's service.

85.     Based on the foregoing, the ETF is an invalid liquidated damages provision and imposition of the ETF violated Cal. Civil Code Section 1671(d) and is unlawful, void and unenforceable under this statute.

86.     The California Subclass members have suffered harm as a proximate result of the violations of law and wrongful conduct of ADT as alleged herein. Pursuant to Cal. Civil Code Section 1671(d), Plaintiff Hogan seeks an order of this Court declaring the ETF contained in the Agreement void and preliminarily and permanently enjoining ADT from further enforcement and collection of ETFs as alleged herein.

87.     Plaintiff Hogan also seeks an order requiring ADT to immediately cease its unlawful practices; make full restitution of all money wrongfully obtained; and disgorge all ill-gotten revenues and/or profits.

**COUNT IV**

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**

**and Similar Consumer Protection Statutes in Other States**

**(Illinois and Non-California Class)**

88.     Plaintiffs incorporate the above allegations by reference as though fully set forth herein.

89.     Plaintiffs bring this claim individually and on behalf of the Illinois Subclass and all Non-California Class members.

90.     At all times relevant hereto there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et. seq. (the "Act").  Similar statutes, identical in their material respects, are in effect in most other jurisdictions within the United States[1].

91.     Section 2 of the Act provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deceptive, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2 (footnotes omitted).

92.     Plaintiffs and other members of the Class, as subscribers of ADT's services, are consumers within the meaning of the Act and similar consumer fraud acts given that Defendant's business activities involve trade or commerce, are

---

[1]  The consumer fraud claims of Pamela Rubeo and absent class members who are current or former subscribers of ADT's services in Illinois are brought under the Act. The consumer fraud claims of absent class members who are current or former subscribers of ADT's services in states other than California are brought under the consumer protection statute(s) of their respective states of subscription.

addressed to the market generally and otherwise implicate consumer protection concerns.

93.     As detailed above, Defendant, failed to disclose material information including: (i) the fees to be assessed to consumers, including any increases of the monthly fees to be assessed during the initial contract term or in advance of any contract extensions; (ii) that moving or changing service during the contract term may result in extending the original contractual obligation by an additional two or three years or trigger an assessment of an ETF penalty.

94.     Defendant used unconscionable commercial practices, deception, fraud, false promise and misrepresentation by: (i) imposing an ETF and cancellation fees that are invalid and unfair and hence a penalty, and representing that such amounts are due and owed; (ii) charging ETF's and cancellation fees that are not reasonably related to the loss or damage suffered by ADT; including unconscionable and unenforceable terms and conditions in the Agreement; and (iii)  implementing an ETF for the purpose of retaining customers.

95.     The imposition of an ETF is deceptive because ADT describes it as a liquidated damages clause and states that its damages are difficult or impracticable to calculate when, in fact, it is a charge intended to tether the customer to Defendant and/or recover the cost of equipment.  ADT's damages, if any, are in fact quite simple to calculate and/or recover.

96.     The imposition of an ETF is unfair because it is imposed even when ADT does not suffer any damages from a class member's early cancellation, such as when the alarm equipment was not provided by ADT and no further monitoring is to take place.

97.     The ETF is an illegal penalty and is unfair because it offends public policy; is so oppressive that the consumer has little alternative but to submit (e.g.

1    Defendant turns delinquent accounts over to collections and negatively impacts

2    consumers' credit history); and causes consumers substantial injury.

3         98.    Defendant's unilateral fee increases are unfair because Defendant does

4    not properly disclose the full amount of contract fees its customers will be required

5    to pay in the initial contract document.

6         99.    Defendant's unilateral fee increase is also unfair and deceptive because

7    its reservation of the right to unilaterally increase fees is buried in a boilerplate

8    contract of adhesion where it is not signed or attested to.  The first page of the

9    contract is the only page that is signed and it specifically refers to other provisions of

10   the contract, including those in which ADT purports to limit its own liability, but this

11   provision is not referenced.

12        100.   Defendant's unilateral fee increase is also invalid because it violates

13   TILA.

14        101.   Defendant intended or consciously disregarded that Plaintiffs and absent

15   Class members would rely on its omissions, misrepresentations and practices so that

16   customers would enroll with ADT and face increased fees while under contract and

17   fees if they cancelled service.

18        102.   By the conduct described herein, ADT has engaged in unfair methods of

19   competition, unconscionable acts or practices, and unfair or deceptive acts or

20   practices in the conduct of trade or commerce.

21        103.   The representations made by ADT were likely to deceive reasonable

22   consumers and a reasonable consumer would have relied on those representations

23   and omissions.

24        104.   Had ADT disclosed all material information regarding its services,

25   Plaintiff and the non-California Class members would not have subscribed to ADT's

26   services.

27

28

CLASS ACTION COMPLAINT                                                    20

105.   Plaintiff Rubeo and the non-California Class members suffered damages as a proximate result of the unfair acts or practices of Defendant alleged herein. Defendant's misrepresentations and/or omissions of material fact were done knowingly, intentionally, willfully or with reckless disregard for the consequences of its actions.

**COUNT V**

**Declaratory Relief Pursuant to 28 U.S.C. Section 2201**

106.   Plaintiffs incorporate the above allegations by reference as though fully set forth herein.

107.   Plaintiffs bring this claim individually and on behalf of the Class members.

108.   There is an actual controversy between ADT and the Classes concerning the enforceability of the Unilateral Price Increase and ETF and cancellation provisions contained in the customer service agreements to which they are all parties.

109.   Pursuant to 28 U.S.C. Section 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

110.   Plaintiffs are interested parties who seek declarations of their rights and legal relations vis-à-vis ADT with regard to the Unilateral Price Increase and ETF and cancellation provisions contained in the customer service agreements to which they are all parties.

111.   An actual controversy has arisen and now exists between Plaintiffs and Defendant because Plaintiffs contend and ADT denies that: (i) the Unilateral Price Increase and ETF and cancellation provisions contained in the customer service agreements constitute unlawful, unfair and/or deceptive business practices; (ii) the ETF and cancellation provisions are invalid liquidated damages clauses and are therefore void; (iii) the Agreements are credit arrangements governed by TILA and

ADT's failure to accurately disclose the fees to be paid by Class members in advance of providing services rendered for those fees violates TILA.

112.   Plaintiffs and Class members who were charged and paid Unilateral Price Increases and ETF and cancellation fees have been harmed because they paid a charge which was not legally due and owing.

113.   Plaintiffs and Class members who were charged and who did not pay ADT have also been harmed because their credit has been damaged due to ADT's reporting of a debt that is due and owing.

114.   A declaration of rights and responsibilities is also necessary for parties who have not been charged these unlawful fees but who are under contract with ADT and susceptible to imposition of these unlawful fees and price increases.

**COUNT VI**

**Violation of the Truth in Lending Act (15 U.S.C. § 1601 et seq.)**

115.   Plaintiffs incorporate the above allegations by reference as though fully set forth herein.

116.   On information and belief, most if not all residential contracts with ADT require more than four installment payments during the initial term of each contract.

117.   These transactions are credit sales pursuant to 15 U.S.C. § 1602(g) and 12 C.F.R . § 226.2(a)(16).

118.   Pursuant to 15 U.S.C. § 1638 (a)(6) and 12 C.F.R . § 226.18(g), ADT is required to disclose on its contracts with consumers the total sale price (cash price, additional charges and finance charges, if any) using that term, and a descriptive explanation.

119.   ADT is also required to disclose any dollar or percentage charge that may be imposed before maturity due to a late payment. ADT is further required to

disclose that the consumer should refer to the contract for information about nonpayment and default.

120.   These disclosures must be made clearly and conspicuously in writing, grouped together with no extraneous information. Defendant has failed to make the appropriate disclosures.

121.   ADT intended that Plaintiffs rely upon ADT's disclosures (or lack of appropriate disclosures) and Plaintiffs did so rely.

122.   As a result, Plaintiffs have sustained actual damages and are entitled to statutory damages for non-compliance with TILA.

## COUNT VII

## Unjust Enrichment

123.   Plaintiffs incorporates the above allegations by reference as though fully set forth herein.

124.   Plaintiffs brings this claim individually and on behalf of the Class.

125.   Defendant received and retained a benefit conferred by Plaintiffs and Class Members at their expense through imposition of Unilateral Price Increases and ETF and cancellation fees.

126.   ADT has benefited unjustly at Plaintiffs' and Class members' expense, which in equity and good conscience ADT should not be permitted to retain.

127.   Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Treatment, which retention of such revenues under these circumstances is unjust and inequitable because ADT's ETF and cancellation provisions are illegal penalties, are not based upon any reasonable assessment of ADT's damages upon a customer's breach, are imposed when ADT itself fails to provide adequate equipment and service under the contract or under other circumstances that do not constitute a customer breach, and because ADT's Unilateral Price Increases are not disclosed at the time of contracting or prior to the

receipt of services subject to the purported fee and are therefore violative of TILA and consumer protection laws intended to protect customers from deceptive and/or fraudulent practices.

WHEREFORE, Plaintiffs, individually and on behalf of the Class of Persons described herein, themselves and all others similarly situated, pray for the following relief:

A.    An Order certifying the Classes as defined above;

B.    Designating Plaintiffs as representatives of the Class and their counsel as Class counsel;

C.    Entering judgment in favor of Plaintiffs and the Classes and against ADT;

D.    A declaration that the early termination fee and cancellation provisions are unlawful penalties and violate the consumer fraud laws asserted herein;

E.    A declaration that the contracts are retail installment contracts governed by TILA and that Defendant failed to properly comply with TILA in that, among other things, its unilateral price increases were not properly disclosed prior to the inception of a contract term.

F.    Preliminary and permanent injunctive relief enjoining Defendant from engaging in all deceptive, unjust and unreasonable practices described herein;

G.    Awarding Plaintiffs and the Class members their individual damages, statutory damages and attorneys' fees and allowing costs, including interest thereon; and

H.    Such other and further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of her claims by jury to the extent authorized by law.

Dated:  December 10, 2012

Respectfully submitted,

**BURSOR & FISHER, P.A**

By: _____
　　　　　L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
　　　　swestcot@bursor.com

**MORGAN & MORGAN, P.C.**
Peter Safirstein
Elizabeth S. Metcalf
Five Penn Plaza, 23rd Fl.
New York, NY  10001
Telephone:  (212) 564-1637
Facsimile:   (212) 564-1807
Email:  psafirstein@forthepeople.com
　　　　emetcalf@forthepeople.com

**MORGAN & MORGAN, P.C.**
Christopher S. Polaszek
One Tampa City Center
201 N. Franklin St., 7th Fl.
Tampa, FL  33602
Telephone:  (813) 314-6484
Facsimile:   (813) 222-2406
Email:  cpolaszek@forthepeople.com

**LAW OFFICE OF JANA EISINGER,
PLLC**
Jana Eisinger
11 West Prospect Avenue
Mount Vernon, New York  10550
Telephone:  (914) 418-4111
Facsimile:   (914)  455-0213
Email:  Jana.Eisinger@gmail.co,

*Attorneys for Plaintiff*

I, Emily Hogan, declare as follows:

1.     I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California.

3.     While living in the Central District of California, in July 2008, I entered into an agreement for alarm and monitoring services with Defendant ADT Security Services, Inc. ("ADT").  The agreement was entered into in the Central District of California and pertained to home monitoring and alarm services at a residence in the Central District of California. I currently reside at the same residence in the Central District of California and my Complaint alleges that certain fee increases and charges placed by ADT against my account at that residence were unlawful.

4.     I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on _November 26_ 2012 at Los Angeles, California.

Emily Hogan

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| EMILY HOGAN and PAMELA RUBEO, on Behalf of Themselves and all Others Similarly Situated, | ) ) ) ) |
| _____<br>*Plaintiff(s)* | ) ) ) |
| v. | ) **CV12-10558** DM6(FMOx) |
| ADT, LLC d/b/a ADT SECURITY SERVICES | ) Civil Action No. |
| | ) ) |
| _____<br>*Defendant(s)* | ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

ADT, LLC
1501 Yamato Rd
Boca Raton, FL  33431

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

L. Timothy Fisher
Bursor & Fisher, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone:  (925) 300-4455

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DEC 1 0 2012

Date: _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>EMILY HOGAN and PAMELA RUBEO, on Behalf of Themselves and all Others Similarly Situated. | DEFENDANTS<br>ADT, LLC d/b/a ADT SECURITY SERVICES |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>L. Timothy Fisher (SBN 191626), Bursor & Fisher, P.A.<br>1990 N. California Blvd., Suite 940, Walnut Creek, CA 94596<br>Telephone: (925) 300-4455 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No   ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 1332 (d); Plaintiffs allege that ADT charges unlawful early termination fees.

FAX FILING

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV12-10558

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Emily Hogan, Los Angeles County | Pamela Rubeo, Illinois |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | ADT, LLC d/b/a ADT Security Services, Inc., Florida |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | Illinois |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date December 10, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |