1
2
3
4
5
6
7
8     **UNITED STATES DISTRICT COURT**
9     **CENTRAL DISTRICT OF CALIFORNIA**
10
11    JOHN ADAMSON, et al.,                )  Case No. CV 12-10558 DMG (PLAx)
                                           )
12                        Plaintiffs,      )  **ORDER RE DEFENDANT'S**
                                           )  **SUPPLEMENTAL MOTION FOR**
13         v.                              )  **SUMMARY JUDGMENT [DOC. # 106]**
                                           )
14                                         )
      ADT, LLC, d/b/a ADT SECURITY         )
15    SERVICES,                            )
                                           )
16                        Defendant.       )
17    _____
18         This matter is before the Court on the Supplemental Motion for Summary
19    Judgment filed by Defendant ADT LLC, d/b/a ADT Security Services.  [Doc. # 106.]
20    The Court has duly considered the arguments and evidence presented in support of and in
21    opposition to the Motion.  For the reasons discussed below, Defendant's Supplemental
22    Motion for Summary Judgment is **GRANTED.**
23                                       **I.**
24                        **PROCEDURAL BACKGROUND**
25         The Court held a hearing on ADT's first Motion for Summary Judgment on April
26    4, 2014.  [Doc. # 101.]  On April 7, 2014, the Court issued an order granting the Motion
27    in part and denying it in part.  [Doc. # 102.]  The Court granted the second cause of
28    action for violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §

-1-

1750 *et seq.*, based on the legality of the Early Termination Fees ("ETFs") of 75% and denied it on claims that ADT violated the CLRA by failing to adequately disclose the ETFs.   It also granted the fifth cause of action for violation of the fraud prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, as to the claim that the ETFs of 75% are invalid, but denied it on the claims that ADT failed to properly disclose the ETFs and the possible extension of contracts.   The Court granted summary judgment on Plaintiffs' CLRA and UCL claims in all other respects.   [Doc. # 102.]

At the April 4, 2014 hearing, the Court ordered supplemental briefing on Plaintiffs' remaining claims for failure to disclose under the CLRA and UCL, causes of action two and five, which are only asserted on behalf of Adamson and the California ETF class. [Doc. # 101.]   ADT filed its supplemental brief on April 18, 2014 [Doc. # 106], and Plaintiffs' filed their opposition on May 9, 2014.   [Doc. # 110.]

## II.[1]

## FACTUAL BACKGROUND

The Court's April 7, 2014 Order sets forth the factual background of this case in detail.   [Doc. # 102.]   The Court therefore recites only those facts material to the claims addressed in this Motion.

John Adamson signed a three-year contract with ADT on June 25, 2012. (Declaration of Paul Slattery ¶ 2, Exh. A [Doc. # 75-2].)   His security system "broke down" in or around January 2013, and it took approximately two months for service to be restored.   (Slattery Decl. ¶ 3 ("Deposition of John Adamson") at 21:8-12 [Doc. # 75-3] (citing the Second Amended Complaint ("SAC") ¶¶ 59-60).)   In addition, "[b]ecause the

---

[1] As it must on this motion for summary judgment, the Court sets forth the material undisputed facts and views all reasonable inferences to be drawn from them in the light most favorable to Plaintiffs, the non-moving parties.

system was not effective as constituted," Adamson wanted to install additional door sensors, but ADT would not provide him with the code he needed to do so.  (*Id.*)  In April 2013, Adamson called ADT to terminate his service because he was unhappy with the service he was receiving.  (Slattery Decl. ¶ 3 ("Deposition of John Adamson") at 21:8-24 [Doc. # 75-3].)  At that time, he knew he would be charged an ETF of 75%.  (*Id.* at 22:2-5.)  He paid the ETF.  (*Id.* at 23: 1-15.)

The first page of Adamson's contract, in bold font, in the middle of the page, states in pertinent part:

> TERM OF CONTRACT:  The initial term of this Contract is for three (3) years and there is a 75% early contract termination charge.  Our alarm monitoring and notification services will begin when the equipment is installed and is operational, and when the necessary communications connection is completed.  If this is a "Residential" Contract, this Contract will automatically renew for successive thirty (30) day term(s) unless terminated by either party's written notice at least thirty (30) days before the end of the then-current term. . . .  If terminated, this Contract ends on the last day of the then-current term.

The second page of Adamson's contract, near the top of the page, in all capital letters, provides in relevant part:

> 2.      Your early termination of this contract.  You agree that the charges due under this contract are based on your agreement to receive and to pay for the services for three (3) full years.  Accordingly, you agree that if you terminate this contract during its initial term, you will pay us an amount equal to 75% of the charges to be paid by you during the remaining initial

three (3) year term of this contract.    No contract termination charges are due if you terminate during the thirty (30) day renewal period(s). . . . This amount is a contract termination charge and not a penalty.

## II.

## STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

In its April 7, 2014 Order, the Court articulated the standard for motions for summary judgment. [Doc. # 102.]  The Court applies the same standard to the pending motion.

## III.
## DISCUSSION

A.    **Adamson's Standing**

Under the CLRA, "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action."  Cal. Civ. Code § 1780(a).  Although "any damage" is broader than "actual damage," "some kind of damage must result."  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641, 88 Cal. Rptr. 3d 859 (2009).

Standing under the UCL is "confined to any person who has suffered injury in fact and has lost money or property as a result of unfair competition."  *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1554, 127 Cal. Rptr. 3d 569, 576 (2011) (internal quotation marks omitted) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320, 102 Cal. Rptr. 3d 741 (2011)).    "In other words, to have standing to bring a section 17200 cause of action, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  *Id.* at 1545 (internal quotation marks omitted) (emphasis in the original).

The SAC generally alleges that the ETFs were inadequately disclosed.  (SAC ¶¶ 101-103.)  It also specifically asserts that ADT failed "to adequately disclose that contracts may be extended (or an ETF applied) if a customer moves or changes the terms of service prior to the expiration of his/her initial contract term."  (SAC ¶ 139.)  ADT argues that there is no evidence that ADT ever extended Adamson's contract or charged him an ETF for moving or changing services, and thus he lacks standing to challenge inadequate disclosure of these practices.  (Supp. Br. at 6-7 [Doc. # 106].)  Adamson does not dispute these facts.  (Supp. Opp'n at 8-10 [Doc. # 110].)  Instead, he argues that ADT's "standing" argument goes to whether he is a proper class representative.  (*Id.*)

The Court agrees.  ADT does not challenge Adamson's standing to assert improper disclosure of the ETF that he was charged and paid.   Whether he can represent other individuals "who have similar, but not identical, interests"—those who allege that their ETFs for moving or changing service, or contract extensions, were improperly disclosed—"depends not on standing, but on an assessment of typicality and adequacy of representation."  *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) (collecting cases).

Accordingly, the Court **DENIES** ADT's Motion on the basis of standing.

**B.**   **Violations of the CLRA and UCL for Failure to Adequately Disclose ETFs**

Adamson's claims under the CLRA and the UCL, which are based on false or misleading business practices and/or advertisements, are "governed by the 'reasonable consumer' test."  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citations omitted).  Under this test, Adamson must establish that the public is likely to be deceived by the allegedly misleading ADT practices.  *Id.* (internal quotation marks omitted); *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal. Rptr. 2d

-5-

486, 495 (2003).  "Rather, the phrase indicates that . . . a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Id.*

Adamson asserts three ways ADT's disclosure of the ETFs in his contract is likely to mislead a reasonable consumer.[2]   First, the contract states that ADT will provide security monitoring services to the customer.   Adamson claims that he failed to receive "good service," yet was nonetheless charged an ETF when he terminated his contract early.   (Supplemental Declaration of L. Timothy Fisher ¶ 3, Exh. U ("John Adamson Depo.") 54:14-24. [Doc. # 110-1].)  Second, Adamson points to evidence that Warncke understood her contract to mean that she would be charged an ETF only if she terminated her contract "without cause."[3]   (*Id.* ¶ 4, Exh. V. ("Jackie Warncke Depo.") at 42:17-20 [Doc. # 110-1].)  Finally, Adamson points to statements by Llewellyn that he believes the layout of the contract is misleading because important paragraphs are not singled out, the font is too small, and the use of all capitalization is difficult to "absorb."  (*Id.* ¶ 5, Exh. W ("John Llwellyn Depo.") at 40:22-41:1-13 [Doc. # 110-1].)

ADT's contract with Adamson explicitly and clearly disclosed, twice, that an ETF would be charged if he terminated his contract early, without any exception for a failure to provide "good service" or a termination for "cause."   On the first page, the provision regarding the ETF is in bold font and near the middle of the page.  On the second page, the ETF provision is in capital letters and near the top of the page.   Both provisions stand out because the provisions directly before and after are not in bold or in capital letters .

---

[2] Adamson does not respond to ADT's Motion regarding the adequacy of the disclosure of a possible extension of a contract, and it is undisputed that Adamson's contract was not extended. Therefore, summary judgment is granted as to this issue.

[3] Warncke signed a three-year contract with Broadview, not ADT.  (Slattery Decl. ¶ 15, Exh. N [Doc. # 75-15].)  At some point, ADT took over Broadview, and thus its contracts.  Warncke does not appear to have signed a contract with ADT.  There is also no evidence that Warncke's contract was similar to Adamson's ADT contract.

Because the contract clearly states that ADT charges an ETF when a plaintiff terminates the contract early, without any qualifications, such as an exception for customer dissatisfaction or inability to fulfill a request, the Court concludes that the ETF provisions are not likely to mislead the reasonable consumer as a matter of law.[4]

Accordingly, summary judgment is **GRANTED** on Plaintiffs' second and fifth causes of action against Adamson.[5]

D.     **Declaratory Relief and Unjust Enrichment Claims**

To the extent Plaintiffs' eighth and ninth causes of action for declaratory relief and unjust enrichment are premised upon their CLRA and UCL claims, summary judgment is also **GRANTED** as to these claims for relief.[6]

---

[4] Despite Adamson's contention that the question of misrepresentation is one of fact for the jury, courts in this Circuit frequently determine, as a matter of law, that a reasonable consumer is not likely to be misled by contract language.  *See, e.g., Harris v. Las Vegas Sands L.L.C.*, 12-10858, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013); *Rooney v. Cumberland Packing Corp.*, No. 12-0033, 2012 WL 1512106, *4 (S.D. Cal. Apr. 16, 2012); *Baxter v. Intelius, Inc.*, No. 09-1031, 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010); *McKinniss v. Sunny Delight Beverages Co.*, No. 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007).

[5] Although ADT does not move for summary judgment based upon Adamson's lack of actual reliance, it appears that Adamson's CLRA and UCL claims also fail on this basis, and that Plaintiffs have conceded this point.   In their Supplemental Opposition, Plaintiffs argue that they need not show actual reliance, citing outdated case law, and they attach evidence that Adamson did not rely on the alleged misrepresentations in the contract.   (Supp. Opp'n at 7; Fisher Supp. Decl. ¶ 3, Exh. U ("Adamson Depo.") at 14:17-25; 15:1-2 (stating that he did not read the contract before signing it, and that he first found out about the ETF ten months later when he read the contract) [Doc. # 110-1].) California law now requires "actual reliance" for misrepresentation claims under the CLRA and UCL. *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1022, 112 Cal. Rptr. 3d 607, 638 (2010) ("Under the CLRA, plaintiffs must show actual reliance on the misrepresentation and harm."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 306,   (2009) ("[A] class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements . . . ."); *see also Block v. eBay, Inc.*, 12-16527, -- F.3d --, 2014 WL 1282288, *3 (9th Cir. Apr. 1, 2014) (plaintiff must allege "actual reliance" under the UCL); *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) ("As with the UCL, consumers seeking to recover damages under the CLRA based on a fraud theory must prove 'actual reliance on the misrepresentation and harm.'").

# IV.

## CONCLUSION

In light of the foregoing, the Court orders as follows:

1.      Summary judgment is **GRANTED** on the second cause of action for violations of the CLRA;

2.      Summary judgment is **GRANTED** on the fifth cause of action for violation of the fraud prong of the UCL;

3.      Summary Judgment is **GRANTED** the eighth cause of action for declaratory relief to the extent it is premised upon the CLRA and UCL claims;

4.       Summary Judgment is **GRANTED** the ninth cause of action for unjust enrichment to the extent it is premised upon the CLRA and UCL claims; And

5.      Within 10 days from the date of this Order, the parties shall file a joint status report regarding how the parties intend to proceed as to the claims remaining in this action.

**IT IS SO ORDERED.**

DATED:       June 16, 2014

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

---

[6] Based upon this Order and the Court's April 7, 2014 Order, summary judgment has now been granted on all claims raised by California plaintiffs John Adamson and Wilma Clark.  The only remaining claims are those against the Maryland plaintiffs, Andrea Stanley and Jackie Warncke, for violations of the Maryland Consumer Protection Act; the claims on behalf of Georgia plaintiff John Llewellyn, for violations of the Truth in Lending Act; and the claims for declaratory relief and unjust enrichment, to the extent that they are based on the Maryland Consumer Protection Act and Truth in Lending Act claims.